# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:25-cv-00206-MR

DAMON LAMARD PACE,    )
            )
    **Plaintiff,**   )
            )  **MEMORANDUM OF**
**vs.**          )  **DECISION AND ORDER**
            )
DILON BYRD, et al.,    )
            )
    **Defendants.**  )
_____ )

**THIS MATTER** is before the Court on the Defendant's Motion for Summary Judgment [Doc. 11].

## I. BACKGROUND

The Plaintiff Damon Lamard Price, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Polk County Detention Center ("PCDC") while he was a pretrial detainee.[1]  The Plaintiff's unverified Complaint passed initial review against Dilon Byrd, a correctional officer, for the use of excessive force and for

---

[1] The Plaintiff is currently an inmate of the State of North Carolina at the Albemarle Correctional Institution.

deliberate indifference to a serious medical need. [Doc. 1: Compl.; Doc. 6: Order on Initial Rev.]. The Plaintiff seeks damages.[2] [Doc. 1 at 5].

Presently pending is the Defendant's Motion for Summary Judgment.[3] [Doc. 11]. Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 13: Roseboro Order]. The Plaintiff has not responded, and the time to do so has expired. These matters are ripe for disposition.

## II.     STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

---

[2] The Plaintiff's request for injunctive relief was mooted by Plaintiff's transfer to state custody. [See Doc. 1 at 5; Doc. 6]; Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007) ("the transfer of an inmate from a unit or location where he is subject to [a] challenged policy, practice, or condition, to a different unit or location where he is no longer subject to the challenged policy, practice, or condition moots his claims for injunctive and declaratory relief.").

[3] The Plaintiff's Motion for Summary Judgment [Doc. 38: Plaintiff's MSJ] was previously denied [Doc. 59: Order].

2

(1986).  A fact is material only if it might affect the outcome of the suit under governing law.  Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party.  The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Id. at 322 n.3.  The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment.  Id. at 324.  Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record.  See id.; Fed. R. Civ. P. 56(c)(1)(a).  Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  To that end, only evidence admissible at trial may be considered by the

Court on summary judgment.  <u>Kennedy v. Joy Technologies, Inc.</u>, 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party.  <u>Anderson</u>, 477 U.S. at 255.  Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  <u>Scott v. Harris</u>, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).  As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts ….  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986).  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

<u>Scott</u>, 550 U.S. at 380.

## III.    FACTUAL BACKGROUND

The following is a summary of the relevant portions of the undisputed forecast of evidence.[4]

The Plaintiff was an inmate at the PCDC on February 18, 2023.  [Doc. 12-2: Byrd Decl. at ¶ 2].  The Plaintiff was placed in a suicide prevention cell that day due to mental health issues.  [Id.].  For safety reasons, the only items allowed in a suicide prevention cell are a smock and a blanket.  [Id.].

The Plaintiff began urinating through a small opening at the bottom of the cell; a towel was placed under his doorway to prevent urine from flowing to the booking area.  [id. at ¶ 3].  At approximately 8:19 a.m., Byrd noticed the Plaintiff pull the towel into his cell.  [Id. at ¶ 4].  Byrd opened the food port and repeatedly instructed the Plaintiff to return the towel; the Plaintiff refused. [Id. at ¶ 5].

Byrd and Sergeant Cantrell[5] opened the Plaintiff's cell door. [Id. at ¶ 6]. Cantrell had his taser at the ready position in drive stun mode.  [Id.].  Byrd successfully pulled the towel out of the cell despite the Plaintiff pulling it back. [Id.].  The Plaintiff then tried to force his way out of the cell.  [Id. at ¶ 7].  Byrd

---

[4] The unverified Complaint cannot be considered on summary judgment as a forecast of evidence. Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes).

[5] Sergeant Cantrell is not a defendant in this case.

drove the Plaintiff back, and the Plaintiff grabbed Byrd's right arm. [Id.]. Cantrell then drive stunned the Plaintiff in the left buttocks area. [Id. at ¶ 7].

As Byrd and Cantrell attempted to place the Plaintiff back in the cell, the Plaintiff grabbed Byrd's duty belt on the right side, where Byrd's taser was located. [Id. at ¶ 8]. Byrd struck the Plaintiff's face with his hand until the Plaintiff let go of the duty belt. [Id.]. The Plaintiff repeatedly tried to grab Byrd's arms, and Cantrell drive stunned the Plaintiff with "minimal effect." [Id.].

Cantrell instructed Byrd to use pepper spray. [Doc. 12-2: Byrd Decl. at ¶ 9]. Byrd deployed his pepper spray into the Plaintiff's face. [Id.]. The Plaintiff relented, and Byrd and Cantrell were able to push the Plaintiff back into the cell and close the door. [Id.].

After the Plaintiff calmed down, he was taken to the shower to decontaminate. [Id. at ¶ 10]. Byrd observed the Plaintiff during decontamination and he appeared to have no injuries. [Id.].

PCDC Jail Administrator Mark Herman provided the Plaintiff's inmate grievances between February 18, 2023 and March 16, 2026. [Doc. 12-3: Herman Decl. at ¶¶ 2-3]. The first grievance within that time range was submitted on August 25, 2023; it does not address the incident at issue. [Doc. 12-5: MSJ Ex (Turnkey Corrections grievance printout)].

## IV. DISCUSSION

### A. Exhaustion

The Prison Litigation Reform Act (PLRA) requires a prisoner to exhaust his administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. In Porter v. Nussle, the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life. 534 U.S. 516, 532 (2002). The Court ruled that "exhaustion in cases covered by § 1997e(a) is now mandatory." Id. at 524 (citation omitted). The Porter Court stressed that, under the PLRA, exhaustion must take place before the commencement of the civil action to further the efficient administration of justice. Id.

In Woodford v. Ngo, the Supreme Court held that the PLRA exhaustion requirement requires "proper" exhaustion: "Administrative law ... requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" 548 U.S. 81, 90 (2006) (quoting Pozo

7

v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). Further, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

A prison official has the burden to prove an inmate's failure to exhaust available administrative remedies. Jones, 549 U.S. at 216. Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, either that exhaustion occurred or that administrative remedies were unavailable. Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011).

The PCDC has a has established a three-step procedure governing inmate grievances. [See Doc. 12-4: MSJ Ex (Polk County Sheriff's Office/ PCDC Policies and Procedures, Chapter 700: Programs and Services)]. Except in circumstances not applicable here, inmates are required to file a grievance within 72 hours of the incident at issue. The shift supervisor then has five working days to respond, and the inmate has two working days to appeal. If an appeal is taken, a lieutenant investigates the grievance and submits a response within five working days; the inmate has two working days to appeal to the administrator. The administrator has seven working

8

days to respond.  The administrator's response is final and "and will constitute exhaustion of the inmate's administrative remedies."  [Id. at 2, 9].

Here, the Defendant has presented a forecast of evidence that the Plaintiff filed no grievances addressing the February 18, 2023 incident in compliance with PCDC policy.  The Plaintiff has failed to demonstrate that he exhausted his claims or that administrative remedies were unavailable him to do so.  Accordingly, the Court concludes that the Defendant is entitled to summary judgment on the grounds that the Plaintiff failed to exhaust his administrative remedies.

### B.    Merits

While the Court concludes that this action is subject to dismissal due to the Plaintiff's failure to exhaust, the Court will nevertheless proceed to address the merits of the Plaintiff's claims.

### 1.    Excessive Force

The Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment."  Graham v. Connor, 490 U.S. 386, 395 n.10 (1989).  To prevail on an excessive force claim, a pretrial detainee must demonstrate only that the force "purposely or knowingly used against him was objectively unreasonable."  Kingsley v. Hendrickson, 576 U.S. 389 (2015).  The standard for assessing a pretrial detainee's excessive

force claim is "solely an objective one." Id.  In determining whether the force was objectively unreasonable, a court considers the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. (citing Graham, 490 U.S. at 396).  A "bystander officer" can be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall v. Prince George's Cnty., 302 F.3d 188, 204 (4th Cir. 2002).

The Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact as to the Defendant's use of excessive force.  First, the forecast shows that there was a legitimate need for the application of force.  The Plaintiff repeatedly refused direct orders to surrender a towel that was not allowed in his cell.  It was objectively reasonable for the Defendant to open the cell and to retrieve the towel in light of safety considerations, to preserve order, and to compel the Plaintiff's compliance. See Scarbro v. New Hanover Cnty., 374 F.App'x 366, 370 (4th Cir. 2010) (holding that the court "must accord due deference to an officer's efforts to restrain a detainee when faced with a dynamic and potentially violent situation; otherwise, 'we would give encouragement to insubordination in an environment which is

already volatile enough'") (quoting <u>Grayson v. Peed</u>, 195 F.3d 692, 697 (4th Cir. 1999), <u>abrogated on other grounds by</u> <u>Short v. Hartman</u>, 87 F.4th 593 (4th Cir. 2023)).

It was also objectively reasonable for Byrd to try pushing the Plaintiff back into the cell, and to strike the Plaintiff with his hand when the Plaintiff grabbed Byrd's utility belt, near his taser. <u>See, e.g., Hernandez v. Reynolds</u>, No. 1:23-cv-755, 2025 WL 1744291, at *4 (M.D.N.C. June 24, 2025) (concluding that defendants' actions in applying two closed fist strikes to plaintiff's head and taking plaintiff to the ground to restrain him were "necessary to [restore order and] maintain control"). Similarly, it was objectively reasonable for Byrd to not intervene when Sergeant Cantrell deployed a taser in response to the Plaintiff trying to force his way out of the cell and grabbing Byrd.

The relationship between the need and the amount of force that was used also weighs in favor of the Defendant. The undisputed forecast of evidence demonstrates that the Plaintiff refused several direct orders, and that his resistance escalated during the interaction. The Plaintiff's escalating defiance left officers with no option other than to use increasing physical means to compel his compliance. <u>See</u> <u>Grayson</u>, 195 F.3d at 696-97; <u>see, e.g.</u>, <u>Dale v. FNU Barnes</u>, 1:23-cv-373, 2024 WL 4416440 (M.D.N.C. Oct. 4,

11

2024) (holding it was appropriate for an officer to use a baton to place the plaintiff in an arm lock after initial attempts to control the plaintiff with his hands failed).  The undisputed forecast of evidence demonstrates that the Defendant used force only as necessary to gain control of the defiant Plaintiff and to restore order.

In sum, no reasonable jury could conclude under these circumstances that the Plaintiff was subjected to excessive force by either officer.  See Kingsley, 576 U.S. at 396-96.  The Defendant's Motion for Summary Judgment will, therefore, be granted on the Plaintiff's excessive force claim.

**2.  Deliberate Indifference to a Serious Medical Need**

A pretrial detainee's claim based on deliberate indifference to a serious medical need is properly brought pursuant to the Fourteenth Amendment. Short v. Hartman, 87 F.4th 593, 611 (4th Cir. 2023).  To prevail on such a claim, a plaintiff must demonstrate that:

> (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had the condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

Id. at 611. Under this standard, "the plaintiff [need not] show that the defendant had actual knowledge of the detainee's serious medical condition

and consciously disregarded the risk that their action or failure to act would result in harm." Id. "[I]t is enough that the plaintiff show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 836 (1994)). Negligence or the accidental failure "to do right by the detainee," however, are not sufficient. Id. at 611-12.

Here, the undisputed forecast of evidence demonstrates that the Plaintiff was pepper sprayed in the face, that he was escorted to a decontamination shower when it was safe to do so, and that he did not appear to have any injuries. As such, there is no forecast of evidence that the Plaintiff had any serious medical need, that Defendant Byrd knew or should have known of such a need and disregarded the same, or that the Plaintiff was harmed in any way. The Defendant's Motion for Summary Judgment will be granted with respect to the Plaintiff's claim for deliberate indifference.

### 3. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to

qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because the Plaintiff has not presented a forecast of evidence that the Defendant violated his constitutional rights, the Court concludes that the Defendant is entitled to qualified immunity. As such, summary judgment for the Defendant would also be proper on this ground.[6]

## IV. CONCLUSION

For the reasons stated herein, the Defendant's Motion for Summary Judgment is granted, and this action is dismissed. While dismissals for failure to exhaust administrative remedies are generally without prejudice,

---

[6] Even though Sgt. Cantrell is not a defendant, an examination of the record and the forecast of evidence shows that no claim against Cantrell, if there were one, would survive summary judgment for the same reasons as stated herein regarding Defendant Byrd. See, Nichols v. Bumgarner, _____ F.4th _____, 2026 WL 1084251 (4th Cir. Apr. 22, 2026).

the dismissal in this case will be with prejudice as the Court has concluded that there is no genuine dispute of material fact regarding the merit of the Plaintiff's § 1983 claims.

## **ORDER**

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 11] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE.**

The Clerk is respectfully instructed to enter a Clerk's Judgment in favor of the Defendant and to close this case.

**IT IS SO ORDERED.**

Signed: June 9, 2026

Martin Reidinger
Chief United States District Judge